UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Reco Jones,

     Plaintiff,

     v.                  Civil Action No. 2:14-cv-199

Andrew Pallito, Michael Touchette,
Mark Potanas, Joshua Rutherford,
and Angel Johnson,

     Defendants.

## REPORT AND RECOMMENDATION
(Doc. 20)

Vermont inmate Plaintiff Reco Jones brings this action *pro se* under 42 U.S.C.

§ 1983 against Vermont Department of Corrections (DOC) employees Defendants

Andrew Pallito, Michael Touchette, Mark Potanas, Joshua Rutherford, and Angel

Johnson.  Jones alleges that Defendants violated his constitutional rights in the course of

denying him access to certain art supplies and hardcover books in 2013 and early 2014.

(*See* Doc. 24, Am. Compl. at 5–7.)  Jones seeks a declaration that Defendants' acts were

unlawful as well as "nominal and punitive damages."  (*Id.* at 7.)

Pending before the court is Defendants' Motion to Dismiss brought under Fed. R.

Civ. P. 12(b)(6).  (Doc. 20.)  Defendants seek dismissal of Jones's Amended Complaint,

"or portions thereof, because Plaintiff has failed to state a claim upon which relief can be

granted." (*Id.* at 1.)[1] Defendants seek dismissal on theories of sovereign immunity (*id.* at 3, 11), lack of personal involvement (*id.* at 5–8), lack of physical injury under the Prison Litigation Reform Act (*id.* at 13), failure to allege a violation of any Eighth Amendment right (*id.* at 8), and operation of the Vermont Tort Claims Act (*id.* at 11). Defendants also contend that Jones has not alleged sufficient facts to support a claim for punitive damages under § 1983, and that under Vermont law Jones cannot recover punitive damages for any alleged negligence. (*See id.* at 14.)

Jones has not filed any opposition to Defendants' Motion to Dismiss. For the reasons stated below, I recommend that Defendants' Motion to Dismiss (Doc. 20) be GRANTED in part and DENIED in part.

## **Background**[2]

The allegations in the Amended Complaint are set forth below.[3] Jones's factual allegations can be divided into two main categories: his request for certain art supplies and his request for certain hardcover books. At all relevant times, Jones was a Vermont

---

[1] After Defendants filed their Motion to Dismiss, Jones filed an Amended Complaint (Doc. 24). The court granted Jones leave to amend—making the Amended Complaint Jones's operative pleading— and resolved to consider the merits of the Motion to Dismiss in light of the Amended Complaint. (*See* Doc. 26.)

[2] Certain DOC policies and directives that are referenced in Jones's Amended Complaint are included in the background and discussion below. The court may take notice of those policies and directives both because they are essentially incorporated into the Amended Complaint by reference, and because state prison rules and regulations are a proper subject for judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972).

[3] I have also included some of Jones's legal conclusions for the sole purpose of understanding what his arguments are. As discussed below, it is unnecessary at present to rule on many of those conclusions because they are not the subject of the pending Motion to Dismiss.

inmate under the custody of the DOC and housed at Vermont's Southern State Correctional Facility (SSCF). Jones sues Defendants in both their individual and official capacities. (Doc. 24 at ¶ 9.)

## I.    Art Supplies

On or about October 21, 2013, Jones submitted a request to SSCF caseworker Kerns requesting permission to purchase certain art supplies. (Doc. 24 at ¶ 10.) According to Jones, "similarly situated inmates" were permitted to possess the same type of art supplies that Jones requested. (*Id.* at ¶ 11.) SSCF Supervisor of Security Rutherford denied Jones's request. (*See id.* at ¶ 15.)

DOC employs a grievance system to resolve complaints from inmates. *See generally* State of Vermont, Agency of Human Services, Department of Corrections, "Offender Grievance System for Field and Facilities," #320.01 (2007) [hereinafter "Directive 320.01"], *available at* http://www.doc.state.vt.us/about/policies/rpd/ correctional-services-301-550/301-335-facilities-general/320.01.pdf. Jones filed a grievance under the DOC grievance process. (*See* Doc. 24 at ¶ 15.) Rutherford conducted the "step 2" grievance investigation. (*Id.*) Jones asserts that Rutherford's involvement in the grievance investigation is a violation of 28 V.S.A. § 854. (*Id.*)[4]

---

[4] Section 854 provides: "The review of grievances shall be by a person or persons other than the person or persons directly responsible for the conditions or actions giving rise to the grievance." Similarly, Directive 320.01 includes the following provision: "No staff involved with, or subject of the grievance, may act as the Investigator or participate in decision-making regarding the grievance resolution. This does not prohibit staff involvement in any alternative dispute resolution process." Directive 320.01 at 13.

Jones's grievance was denied at each step of the grievance process; Defendants Rutherford, SSCF Superintendent Potanas, DOC Director of Facilities Touchette, and DOC Commissioner Pallito all repeatedly denied Jones's request for art supplies. (*See* Doc. 24 at ¶ 12.) Those Defendants denied Jones's request despite his assertion that the art supplies available on the commissary list were inadequate "for inmates serious about using art as a medium to express themselves and to communicate." (*See id.* at ¶ 14.) Touchette and Pallito claimed that since the art supplies Jones was requesting were "not on the state[-]wide property matrix," inmates could not possess them. (*Id.* at ¶ 13.)[5]

Additionally, Jones contends that Rutherford "displayed a continued discourteous attitude towards [Jones] since he engaged in his constitutionally protected action of submitting grievances and writing letters critical of Rutherford's actions or lack thereof." (Doc. 24 at ¶ 16.) According to Jones, Rutherford's retaliatory behavior included a general "boorish" attitude towards him, ignoring him and his written requests and inquiries, admonishing him for his use of the law library typewriter, and not allowing him to purchase sunglasses for eye protection when in outdoor areas of the SSCF facility. (*See id.*)

---

[5] Jones disputes that conclusion, citing DOC Directive 321.01, which provides in pertinent part:

Each Superintendent will develop local procedures to address what hobby craft, arts and crafts programs, and materials will be permitted at their facility. Such determination will be based on storage space considerations as well as fire safety and security. The Director of Security, Operations, and Audits will review and approve all hobby craft programs and materials.

State of Vermont, Agency of Human Services, Department of Corrections, "Offender/Inmate Property," #321.01 (2010), at 7, *available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/321-01-offender-inmate-property.

## II.    Hardcover Books

On April 7, 2014, Jones submitted a request form to SSCF caseworker Jamie
Dickey, requesting the purchase of four books.  (*Id*. at ¶ 17.)  Dickey approved the
request.  (*Id* at ¶ 18.)  Jones received two of the books on or about April 18, 2014.  (*Id.*)
Dickey verbally notified Jones that the other two books (*The Book of Cards* and *The
Greatest Show on Earth*) were being withheld because they were hardcover books.  (*Id.*
¶ 19.)[6]  Neither of the two withheld books were available in softcover or in the SSCF
library.  (Doc. 24 at ¶ 21.)

Jones asserted to Dickey that the ban on hardcover books is a violation of his
constitutional rights.  (*Id*. at ¶ 20.)  On or about April 21, 2014, Jones received
notification from SSCF Administrative Assistant Defendant Angel Johnson that "$5.49
was withdrawn from his inmate account to return [the hardcover] books."  (*Id*. at ¶ 22.)
Jones asserts that Johnson's notification was a violation of DOC Directive 409.05 since,
according to Jones, that Directive "requires that inmates and vendors be provided written
notice prior to returning refused items."  (*Id.*)  Jones then filed grievances with
Defendants Rutherford, Potanas, Touchette, and Pallito, alleging that DOC's ban on
hardcover books was unconstitutional.  (*Id*. at ¶ 23.)  According to Jones, those
Defendants "failed or refused to respond to Plaintiff's grievances 1 and 7."  (*Id.* at ¶ 24.)

---

[6]  DOC Directive 409.05 states that "[b]ooks will only be soft cover unless they are educational
texts."  State of Vermont, Agency of Human Services, Department of Corrections, "Inmate Mail,
Publications, and Audio/Visual Regulations," #409.05 (2010), at 10 n.* [hereinafter "Directive 409.05"],
*available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/401-500-
programs-security-and-supervision/409-05-inmate-mail-publications-and-audio-video-regulations.

## Discussion

### I. Legal Standard and Applicable Law

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (second alteration in original) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

Where, as here, the plaintiff is proceeding *pro se*, courts are obligated to construe the pleadings liberally. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008); *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Nevertheless, a *pro se* plaintiff's complaint must still state a claim to relief that is plausible on its face. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Even though Jones has not filed an opposition to the Motion to Dismiss, the court must still determine the sufficiency of the

Amended Complaint as a matter of law.  *See Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010).

Jones brings this suit under 42 U.S.C. § 1983.  Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges."  *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

## II.     Eleventh Amendment Sovereign Immunity

Defendants move to dismiss Jones's claims against them in their official capacities, arguing that these claims are barred by Vermont's sovereign immunity under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment generally prohibits plaintiffs from recovering in federal court damages against state officials in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) ("[A] claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment.").  There are exceptions to that general

rule.  A state may waive its Eleventh Amendment immunity so long as the waiver is

unequivocally expressed.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1

(1985).  In addition, Congress may abrogate the Eleventh Amendment pursuant to § 5 of

the Fourteenth Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Neither exception applies in this case.  Vermont has expressly preserved its

immunity under the Eleventh Amendment.  *See* 12 V.S.A. § 5601(g).[7]  And Congress did

not intend to abrogate sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440

U.S. 332, 340–41 (1979).[8]  Since neither exception applies, I recommend that

Defendants' Motion be GRANTED insofar as it seeks dismissal of any claims for money

damages against Defendants in their official capacities.

## III.    Personal Involvement

To recover damages under 42 U.S.C. § 1983, a plaintiff must allege the personal

involvement of each of the individual defendants.  *See Moffitt v. Town of Brookfield*, 950

F.2d 880, 886 (2d Cir. 1991) ("[P]ersonal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.")

(internal quotation marks omitted).  A prison official cannot be held personally liable

under § 1983 on the basis of respondeat superior or simply because he or she sits atop the

---

[7]  As discussed below respecting any state-law claim that Jones might be asserting, the Vermont Tort Claims Act constitutes a limited waiver of Vermont's sovereign immunity.  The waiver does not, however, extend to any suits against state officials in their official capacities.

[8]  Moreover, as Defendants point out, state officials acting in their official capacities are not "persons" under § 1983.  *See Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2004).

prison hierarchy.  *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).  Personal

involvement can be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed the wrongful
> acts, or (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that unconstitutional acts
> were occurring.

*Colon*, 58 F.3d at 873.[9]  Here, each Defendant except Defendant Rutherford argues that

Jones has failed to allege their personal involvement.  For the reasons below, I

recommend that Defendants' Motion be DENIED insofar as it seeks dismissal of Jones's

§ 1983 claims for damages against Defendants Pallito, Touchette, Potanas, and Johnson

for lack of personal involvement.

### A.    Defendants Pallito, Touchette, and Potanas

Defendants Pallito, Touchette, and Potanas each assert that Jones's § 1983

damages claims against them in their individual capacities should be dismissed.  They

contend that Jones has failed to allege that they were personally involved in any of the

challenged conduct, and that there are no allegations that they could be liable as

supervisors by creating or allowing a policy or custom of constitutional violations, or by

engaging in grossly negligent supervision.  (*See* Doc. 20 at 4–7.)

---

[9]  This court has recognized a disagreement within the Second Circuit as to whether the Supreme
Court's decision in *Iqbal* abrogated any of the *Colon* categories of supervisor liability.  *See Byrne v.
Trudell*, No. 1:12-cv-245-jgm-jmc, 2013 WL 2237820, at *9 n.10 (D. Vt. May 21, 2013).  In the absence
of any Second Circuit decision specifically overruling *Colon*, this court has continued to treat *Colon* as
good law.  *See id.*

Here, Jones alleges that he appealed to Defendants Pallito, Touchette, and Potanas in the course of pursuing his grievances relating to art supplies and hardcover books, and that they either denied his grievances or failed or refused to respond. At the motion-to-dismiss stage, Jones is entitled to the inference that those Defendants received the grievances, read them, and thereby became aware of the alleged unconstitutional or wrongful conditions that were the subject of those grievances. *See Grullon v. City of New Haven*, 720 F.3d 133, 140–41 (2d Cir. 2013).

Based on that inference, Jones has alleged sufficient facts to support personal involvement by Defendants Pallito, Touchette, and Potanas. *See King v. McIntyer*, No. 9:11-CV-1457, 2014 WL 689028, at *9 (N.D.N.Y. Feb. 20, 2014) (at the motion-to-dismiss stage, plaintiff who alleged that he wrote complaints to New York corrections commissioner was entitled to inference that the commissioner received the complaints, and had therefore sufficiently alleged commissioner's personal involvement). Defendants Pallito, Touchette, and Potanas therefore are not entitled to dismissal on grounds of lack of personal involvement.

### B.  Defendant Johnson

Defendant Johnson argues that Jones's § 1983 damages claim against her in her individual capacity should be dismissed because, under Directive 409.05, "the written notice is the responsibility of the Security and Operations Supervisor, not the Administrative Assistant." (Doc. 20 at 8.)  That argument, however, is not an argument that Johnson was not personally involved in any alleged violation; it is an argument that Johnson's conduct was not a violation at all.  I treat that argument below.

## IV.    PLRA's Physical Injury Requirement

Defendants maintain that Jones's § 1983 claim for compensatory damages should be dismissed because he has failed to allege that he suffered any physical injury.  This argument relies upon § 1997e(e) of the Prison Litigation Reform Act (PLRA), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  42 U.S.C. § 1997e(e).  The purpose of § 1997e(e) is to distinguish meritorious prisoner claims from frivolous ones.  Because the statutory phrase "Federal civil action" is unqualified, the statute "applies to all federal civil actions including claims alleging constitutional violations."  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *see also Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998).  Section 1997e(e) is not a bar to suit, but instead operates only as "a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury."  *Thompson*, 284 F.3d at 416.  Thus, § 1997e(e) "does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief."  *Id*.

In his original Complaint, Jones asserted that "[t]he malicious violation of plaintiff's rights combined to cause him extreme emotional distress."  (Doc. 5 at ¶ 50.) Jones does not include that assertion in his Amended Complaint, nor does any portion of the Amended Complaint appear to seek recovery of damages for mental or emotional injury.  In any case, to the extent that Jones does seek to recover damages for any mental or emotional injury, he has not alleged any physical injury and thus any such recovery is

barred under § 1997e(e). I therefore recommend that Defendants' Motion be GRANTED insofar as it seeks dismissal of any § 1983 claim for mental or emotional injury that Jones might be asserting.

## V. Violation of a Constitutional Right

As noted above, an essential element of any § 1983 claim is the denial of a federal statutory right or a constitutional right or privilege. In their Motion to Dismiss, Defendants primarily argue that Jones has failed to sufficiently allege a violation of his Eighth Amendment rights. Defendant Johnson also argues that she did not violate any of Jones's due process rights because it was not her responsibility to supply the written notification. Otherwise, Defendants do not argue that Jones has failed to allege the denial of a due process, equal protection, or First Amendment right. I therefore address only Defendant Johnson's argument and Defendants' Eighth Amendment argument. For the reasons that follow, I recommend that Defendants' Motion be GRANTED insofar as it seeks dismissal of Jones's claim against Defendant Johnson, and also insofar as it seeks dismissal of any Eighth Amendment claim that Jones might be asserting against Defendants.

### A. Due Process—Defendant Johnson

Jones's claim against Defendant Johnson is that she failed to follow DOC's own Directive regarding notice when an inmate-requested publication is disapproved. As noted above, Defendant Johnson argues that she did not violate Jones's due process rights

because, under Directive 409.05, "the written notice is the responsibility of the Security and Operations Supervisor, not the Administrative Assistant." (Doc. 20 at 8.)[10]

The portion of Directive 409.05 at issue sets forth "procedural guidelines" to be followed "[w]hen a publication is identified as a potential disapproval due to its content and it is not already on the disapproved publication list." Directive 409.05 at 11. In short, if a publication is disapproved after progressive review by staff, the Security and Operations Supervisor, and by the Director of Security, Operations and Audits, then the inmate is to receive "written notice from the Security and Operations Supervisor," and the publisher is also entitled to a notification "in writing" from the Director of Security, Operations and Audits "or designee." *Id.* at 11–12. The Directive further provides that "[a]ll disapproved publications will be retained by the Security, Operations and Audits Unit until all appeals are exercised, or upon final adjudication, and the publication is returned to the inmate, if such decision is made." *Id.* at 12.

Johnson is correct insofar as she notes that it is not her responsibility to issue the written notices contemplated by Directive 409.05.[11] Even more fundamental, however, is the fact that the portion of Directive 409.05 at issue only applies if the publication is disapproved *due to its content*. There is no content-based "approval"/"disapproval"

---

[10] Johnson does not argue that violation of a DOC Directive, by itself, might be insufficient to give rise to § 1983 liability. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."). However, for the reasons discussed below it is therefore unnecessary to address that potential argument.

[11] The Amended Complaint does not allege that the Director of Security, Operations and Audits designated Johnson to supply any written notice to the publisher.

13

process for hardcover books because under Directive 409.05 inmates are generally not entitled to access hardcover books at all. Directive 409.05 at 10 & n.*. I therefore conclude that Jones has failed to allege any failure by Johnson to comply with Directive 409.05's notice requirements, and consequently that he has failed to state a claim for any due process violation by Johnson.

### B. Eighth Amendment

The Eighth Amendment to the United States Constitution enjoins both the federal government and the states (by incorporation through the Fourteenth Amendment) from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. To prove that conduct rises to the level of cruel and unusual punishment, a plaintiff must satisfy both an objective and subjective standard. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). Under the objective test, a plaintiff must show that misconduct resulted "'in unquestioned and serious deprivations of basic human needs,'" such as "'the minimal civilized measure of life's necessities.'" *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). On the subjective side, a plaintiff must demonstrate that the defendants were "deliberately indifferent" to the objectively-serious risk to plaintiff's health or safety. *Jolly*, 76 F.3d at 480. This "deliberate indifference" standard requires a plaintiff to show that defendants consciously knew of the risk and chose to disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Amended Complaint does not explicitly invoke the Eighth Amendment; the only explicit constitutional provisions that Jones mentions are the First and Fourteenth

Amendments.  (*See* Doc. 24 at 5–6.)  In any case, Jones's allegations regarding the withholding of higher-quality art supplies and hardcover books do not state a plausible Eighth Amendment claim.  Under the objective test, Jones has not shown that withholding any of those items results in a serious deprivation of a basic human need.  Basic human needs are typically things like "'food, clothing, shelter, medical care, and reasonable safety.'"  *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).

The Eighth Amendment might impose some ultimate limit on the extent to which prisons could deprive inmates of "expressive activity."  *See Kimberlin v. Dep't of Justice*, 318 F.3d 228, 239–40 (D.C. Cir. 2003) (Tatel, J., concurring in part and dissenting in part) (suggesting that the Eighth Amendment might be implicated if policies reduced prisons to "places of virtually silent, solitary confinement, where prisoners may not read, write, or engage in any other expressive activity"); *Shoatz v. Wetzel*, Civil Action No. 2:13-cv-0657, 2014 WL 294988, at *4 (W.D. Pa. Jan. 27, 2014) (twenty-two-year solitary confinement that included deprivation of human contact and mental stimulation plausibly established Eighth Amendment claim).  But here there is no allegation that Jones was deprived of *any* opportunity to read or practice art; at most he was deprived of *certain* art supplies and *certain* books.  Nor is there any allegation that Defendants knew that denial of the art supplies and hardcover books posed any risk to Jones's health or safety and chose to disregard such a risk.

Decisions from other courts are in accord.  *See Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (single instance of deprivation of books did not violate Eighth

Amendment); *Jackson v. Wengler*, Civil No. 07-3587 (JRT/FLN), 2007 WL 3275102, at *3 (D. Minn. Nov. 2, 2007) (access to only one book per day did not violate Eighth Amendment); *Sharp v. Johnson*, No. 00-2156, 2005 WL 3560811, at *2 (W.D. Pa. Dec. 28, 2005) (deprivation of access to art supplies during prisoner's confinement in administrative custody did not violate Eighth Amendment); *Moore v. Gander Hill Prison*, No. Civ.A. 01-031-JJF, 2003 WL 21730114, at *3 (D. Del. July 22, 2003) (prison policy prohibiting books longer than 1,000 pages did not violate Eighth Amendment).

The only other factual allegation in the Amended Complaint that has any potential Eighth Amendment dimension is Jones's allegation that Defendant Rutherford refused to allow him to purchase sunglasses for eye protection for use during outdoor activities. It is true that, in some circumstances, deprivation of eyewear can amount to an Eighth Amendment violation. *See Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996) (claim concerning deprivation of tinted "corrective eye-glasses medically prescribed to alleviate the significant visual deficiencies of double vision and loss of depth perception" was "by no means frivolous"); *Allah v. Folino*, No. Civ.A. 04-1167, 2006 WL 1520679, at *2 (W.D. Pa. May 15, 2006) (concluding that, where inmate claimed denial of his sunglasses caused him headaches and visual problems, his Eighth Amendment claim survived a motion to dismiss).

Here, however, the Amended Complaint includes no allegations suggesting that Jones needed or was prescribed sunglasses or tinted glasses due to any specific medical condition, or that he suffered any serious medical consequences without sunglasses. Moreover, the Amended Complaint contains no allegations that Rutherford consciously

knew that, without sunglasses, Jones faced a serious risk to his health or safety. I therefore conclude that Jones has failed to state an Eighth Amendment claim arising out of Rutherford's alleged failure to allow Jones to purchase sunglasses.

## VI.    Section 1983 Punitive Damages

Punitive damages may be awarded under § 1983 only when "'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Disorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Defendants seek dismissal of Jones's claim for punitive damages under § 1983, arguing that Jones has failed to allege facts sufficient to show such a mental state. (Doc. 20 at 14.) Jones asserts in his Amended Complaint that he "believes that he will provi[]de suffic[i]ent evidence to demonstrate that Defendant Rutherford's actions were motivated by evil intent, as a result of plaintiff engaging in a constitutionally protected act, fil[]ing grievances and writing letters critical of defendant's actions." (Doc. 24 at ¶ 25.) Jones also asserts that, in violation of his equal protection rights, Defendants Pallito, Touchette, Potanas, and Rutherford "knowingly and maliciously" denied him access to art materials that other similarly situated inmates are allowed to possess. (*Id.* at ¶ 33.)

Defendants have not sought dismissal of any First Amendment retaliation claim or Fourteenth Amendment claim that Jones is asserting; as noted above, Defendants primarily argue that Jones has failed to sufficiently allege a violation of his *Eighth Amendment* rights. It is therefore somewhat awkward to evaluate the allegations of Defendants' mental states without considering the allegations of the underlying allegedly

wrongful conduct. Assuming, without deciding, that Jones has stated plausible First and Fourteenth Amendment claims, I conclude that he has also stated allegations that, "[a]lthough threadbare . . . are minimally sufficient to identify evil motive or reckless or callous indifference." *Gardner v. Barry*, Civil Action No. 1:10-CV-0527, 2010 WL 4853885, at *11 (M.D. Pa. Nov. 23, 2010); *see also Martin v. Gold*, No. 1:05–CV–28, 2005 WL 1862116, at *10 (D. Vt. Aug. 4, 2005) (declining to dismiss inmate's claim for punitive damages because "his allegations would be arguably sufficient to survive a motion to dismiss" and because "proof of the defendants' intent is not readily available to an inmate when filing his complaint"). Accordingly, I recommend that Defendants' Motion to Dismiss be DENIED insofar as it seeks dismissal of Jones's § 1983 punitive damages claim.

## VII.    State-Law Claims

As noted above, in his original Complaint, Jones asserted that "[t]he malicious violation of plaintiff's rights combined to cause him extreme emotional distress." (Doc. 5 at ¶ 50.) Interpreting that as a potential state-law claim for intentional or negligent infliction of emotional distress, Defendants argue that, under the Vermont Tort Claims Act (VTCA), 12 V.S.A. §§ 5601–5606, Jones has sued the wrong persons (namely, them instead of the State of Vermont) in the wrong court (namely, this court instead of the Vermont Superior Court). (*See* Doc. 20 at 11–13.) In his Amended Complaint, however, Jones does not assert that he suffered emotional distress. And, since the only three "legal claims" discussed in the Amended Complaint are claims based on the Fourteenth and

First Amendments (Doc. 24 at 5–7), it therefore appears unlikely that Jones is asserting any state-law claim.

Regardless, any state-law claim that Jones might be asserting against Defendants is constrained by Vermont's sovereign immunity. The VTCA constitutes only a limited waiver of Vermont's sovereign immunity; it allows lawsuits resulting from state employee torts to be brought "(1) solely against the State of Vermont and (2) exclusively in Vermont superior courts." *Rheaume v. Tallon*, No. 1:07-cv-262, 2009 WL 385422, at *2 (D. Vt. Feb. 12, 2009); *see also* 12 V.S.A. §§ 5601(a), 5602(a).[12] Here, the latter limitation is sufficient to dispose of any state-law claim that Jones might be asserting against Defendants in this court. As the court has previously stated, the VTCA "does not waive Vermont's sovereign immunity such that plaintiffs may sue state employees for negligence in federal court." *Breer v. Gold*, No. 2:03-CV-326, 2009 WL 249648, at *7 (D. Vt. Feb. 3, 2009). Accordingly, I recommend that any state-law claim Jones might be asserting against Defendants be DISMISSED without prejudice.[13]

## VIII. Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis*

---

[12] There is an exception to the VTCA's rule that such suits must be brought solely against the State of Vermont: the VTCA does not prevent a defendant from suing a state employee individually in cases of "gross negligence or willful misconduct." 12 V.S.A. § 5602(b).

[13] It is therefore unnecessary to reach Defendants' argument (Doc. 20 at 14) that Vermont law does not authorize punitive damages for negligence.

*v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including futility or "repeated failure to cure deficiencies by amendments previously allowed." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted). An opportunity to amend is not required where "[t]he problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, no amendment would cure the Amended Complaint's deficiencies regarding sovereign immunity, or the fact that Defendant Johnson's conduct was not a violation of Directive 409.05. Moreover, Jones has already taken the opportunity to amend his Complaint once, yet still has not alleged any physical injury, nor has he alleged any facts that might suggest the denial of sunglasses rose to an Eighth Amendment deprivation. Any Eighth Amendment claim stemming from the withholding of art supplies or hardcover books is futile for the reasons discussed above. For all these reasons, leave to amend should be denied.

## Conclusion

For the above reasons, I recommend that Defendants' Motion to Dismiss (Doc. 20) be GRANTED in part and DENIED in part. Specifically, I recommend that the Motion to Dismiss be:

1. GRANTED insofar as it seeks dismissal of all claims for money damages against Defendants in their official capacities;

2. DENIED insofar as it seeks dismissal of Jones's § 1983 claims for damages against Defendants Pallito, Touchette, Potanas, and Johnson for lack of personal involvement;

3. GRANTED—for failure to allege any accompanying physical injury—insofar as it seeks dismissal of any § 1983 claim for mental or emotional injury that Jones might be asserting;

4. GRANTED insofar as it seeks dismissal of Jones's claim against Defendant Johnson;

5. GRANTED insofar as it seeks dismissal of any Eighth Amendment claim that Jones might be asserting against Defendants;

6. DENIED insofar as it seeks dismissal of Jones's claim for punitive damages under § 1983; and

7. GRANTED insofar as it seeks dismissal (without prejudice) of any state-law claims Jones might be asserting against Defendants.

If the court adopts this Report and Recommendation, Jones's § 1983 claims against all Defendants in their official capacities should be DISMISSED; any § 1983 claim that Jones might be asserting against Defendants for mental or emotional injury should be DISMISSED; Jones's claim against Defendant Johnson should be DISMISSED and she should be terminated as a party; any Eighth Amendment claim that Jones might be asserting should be DISMISSED; and any state-law claims that Jones might be asserting should be DISMISSED without prejudice.

Dated at Burlington, in the District of Vermont, this 2nd day of April, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See Fed. R. Civ. P. 72(a); Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).